UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KEVIN MCCAFFREY and JAGERMIESTER
DELI, INCORPORATED,

        Plaintiffs,

     -against-

COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, NASSAU COUNTY
FIRE COMMISSION, NASSAU COUNTY
POLICE OFFICER SERGEANT ARNOLD,
individually and in his Official Capacity,
NASSAU COUNTY FIRE MARSHAL JOHN
KELHER, individually and in his Official Capacity,
NASSAU COUNTY FIRE MARSHAL PAUL
SYMANSKI, individually and in his Official Capacity,
NASSAU COUNTY CHIEF FIRE MARSHAL
THOMAS E. TILLEY, individually and in his
Official Capacity, NASSAU COUNTY
COMMISSIONER OF POLICE LAWRENCE W.
MULVEY, individually and in his Official Capacity,

        Defendants.
-------------------------------------------------------------X

MEMORANDUM AND ORDER

11-CV-1668

(Wexler, J.)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 25 2013 ★

LONG ISLAND OFFICE

APPEARANCES:

THE LAW OFFICE OF BORRELLI & ASSOCIATES, P.L.L.C.
By: PAUL J. FAMIGHETTI, ESQ.
1010 Northern Boulevard, Suite 328
Great Neck, New York 11021
Attorneys for Plaintiffs

JOHN CIAMPOLI, NASSAU COUNTY ATTORNEY
By: RALPH J. REISSMAN, ESQ., DEPUTY COUNTY ATTORNEY
1 West Street
Mineola, New York 11501
Attorneys for Defendants

WEXLER, District Judge:

     Plaintiff Kevin McCaffrey ("McCaffrey") and Jagermeister Deli Incorporated ("Deli"),

which is owned by McCaffrey, (collectively "Plaintiffs") bring this action alleging seven claims

consisting of violations of Plaintiffs' First, Fourth, Fifth and Fourteenth Amendment rights in

violation of 42 U.S.C. § 1983, violations of 18 U.S.C. § 1962 and § 1964 ("Racketeer Influenced

and Corrupt Organizations Act," or "RICO"), false arrest and imprisonment, abuse of process

and trespass to land and chattel. The claims emanate from two inspections of Jagermeister Deli

performed by Nassau County Police on November 11, 2010, and a subsequent inspection by the

Nassau County Police and the Nassau County Fire Marshals on December 6, 2012. Defendants

County of Nassau ("County"), Nassau County Police Department ("NCPD"), Nassau County Fire

Commission ("NCFC"), Nassau County Police Officer Sergeant Arnold ("Arnold"), Nassau

County Fire Marshal John Kehler ("Kehler")[1], Nassau County Fire Marshal Paul Symanski

("Syzmanski"), Nassau County Chief Fire Marshal Thomas E. Tilley ("Tilley"), Nassau County

Commissioner of Police Lawrence W. Mulvey ("Mulvey"),[2] (collectively, the "Defendants")

move for summary judgment against all of Plaintiff's claims pursuant to Federal Rules of Civil

Procedure ("Fed.R.Civ.P."), Rule 56. For the reasons that follow, Defendants' motion is granted

in part and denied in part.

BACKGROUND

## I.    Factual Background

The facts set forth below are from the parties' local Rule 56 Statements, the affidavits and

---

[1]Plaintiffs refer to this Defendant as John Kehler. The court will follow the spelling used by his counsel: Kelleher. Similarly, while the caption spells Defendant's name as "Symanski," the Court will follow the spelling used by his counsel: Szymanski.

[2]Defendants Arnold, Kehler, Symanski, Tilley and Mulvey are sued individually and in their official capacities.

exhibits, including deposition transcripts, offered in support of this motion for summary judgment.

A.    The November 11, 2010 Inspection

Plaintiff Kevin McCaffrey is the owner of Plaintiff Deli. At the time of the events, Defendant Sgt. Arnold was assigned to Second Precinct in Nassau County and was responsible for performing inspections of premises licensed to sell liquor, beer or wine. See Defendants' Statement of Material Facts Pursuant to Rule 56.1 ("Def. 56.1 Stmt."), ¶ 2-3; Plaintiffs' Responses to Defendants' Local Rule 56.1 Statement ("Pl. Counter-56.1 Stmt."), ¶ 2-3. On November 1, 2010, Arnold was directed to inspect various licensed premises, including the Deli. Def. 56.1 Stmt.; Pl. Counter-56.1 Stmt, ¶ 11.

Arnold first attempted to conduct an inspection of the Deli on November 7, 2010 and finding it closed, he returned on November 11, 2010 at 3:55 pm (the "November Inspection"). Def. 56.1 Stmt.; Pl. Counter-56.1 Stmt, ¶ 12-13. Upon entering, Arnold told the woman behind the counter that he was conducting a licensed premises inspection and she summoned McCaffrey, the owner, from the back. McCaffrey retrieved the beer license from the front of the store to show Arnold. Def. 56.1 Stmt.; Pl. Counter-56.1 Stmt, ¶ 14. While there, Arnold noted that the cooking grill appeared overly grease-laden and did not see any fire extinguishers. Def. 56.1 Stmt.; Pl. Counter-56.1 Stmt, ¶ 13. While completing the form required to complete the inspection, Arnold asked McCaffrey for his home telephone number or other emergency contact number. Def. 56.1 Stmt.; Pl. Counter-56.1 Stmt, ¶ 8, 15. McCaffrey questioned why Arnold needed his home number, to which Arnold responded that the police needed to have an emergency number to reach McCaffrey during non-business hours. Ultimately, McCaffrey gave

-3-

Arnold the number.  Def. 56.1 Stmt.; Pl. Counter-56.1 Stmt, ¶ 15.

McCaffrey claims that when he asked Arnold why he needed his cell number, Arnold got annoyed and said he'd "get it out of [him] one way or another." Plaintiff's Counter-Statement of Material Facts in Dispute ("Pl. 56.1 Stmt."), ¶ 23. According to Plaintiff, Arnold repeatedly demanded of Plaintiff "[W]hat's really bothering you? I'll stay here all day until you tell me what's bothering you." Pl. 56.1 Stmt., ¶ 25, 29. There is no material dispute that Plaintiff responded something to the effect that "I'll tell you what's bothering me. You're bothering me. You come in here on a national holiday on Veteran's Day pumping up your pension. ... You're a Sergeant, probably getting double time, and you're harassing me for no reason." Pl. 56.1 Stmt., ¶ 31. See also Def. 56.1 Stmt., Pl. Counter-56.1 Stmt, ¶ 16.

According to Plaintiff, Arnold became enraged and responded, "Nobody talks to me like that. I'll take care of you, Mr. McCaffrey. You're gonna pay for this. You're gonna pay big time." Pl. 56.1 Stmt., ¶ 33; see also Declaration of Peter J. Famighetti ("Famighetti Dec."), Exhibit 2: Deposition of Kevin McCaffrey ("McCaffrey Dep."), at 47-48. After Arnold left the deli and returned to his car, McCaffrey followed him, telling Arnold he never meant to offend him, to which Arnold responded, "Well that doesn't justify some of the comments that you made to me in your store." Pl. 56.1 Stmt., ¶ 37; see also Famighetti Dec., Ex. 4: Deposition of Sergeant Eric Arnold ("Arnold Dep."), at 111. Plaintiff claims Arnold continued on, saying "Oh, you think you can come out here and apologize to me now and it's all gonna be good? No. I'm going to get you now. I'm gonna take care of you. You're gonna pay." Pl. 56.1 Stmt., ¶ 37, citing McCaffrey Dep., at 49. Arnold then left.

B.    The December 6, 2010 Inspection

It is undisputed that a few weeks later, Arnold arranged to conduct a dual inspection with the Fire Marshal in light of the potential violations he observed during the November Inspection. He returned to the Deli on December 6, 2010 shortly after 2:00 pm with Defendants Fire Marshals Szymanski and Kelleher (the "December Inspection"). They were also joined by Police offices Christopher Lynch and John Papadakis. Def. 56.1 Stmt., Pl. Counter-56.1 Stmt, ¶¶ 21, 23, 28. They all entered the store and proceeded to enter behind the counter area to allow the Fire Marshals to conduct their inspection of the cooking equipment and back kitchen area. McCaffrey came out from the back kitchen area. Def. 56.1 Stmt., Pl. Counter-56.1 Stmt, ¶ 28.

Arnold told McCaffrey he and the Fire Marshals were there to conduct a dual inspection and that if McCaffrey interfered or refused inspection, he would be arrested. Def. 56.1 Stmt., Pl. Counter-56.1 Stmt, ¶ 29. Arnold asked McCaffrey to show Arnold his beer license, which he did.[3] Def. 56.1 Stmt., Pl. Counter-56.1 Stmt, ¶ 30.

McCaffrey asked if he could leave the store. There is no dispute that McCaffrey was not placed in handcuffs or physically arrested. Def. 56.1 Stmt., Pl. Counter-56.1 Stmt, ¶ 31. Yet, McCaffrey claims that the officers told him that, "[i]f you walk out that door we will take you down, handcuff you and bring you in. ... You are basically under arrest. You're getting an appearance ticket today. You'll have to appear in court with an attorney." Famighetti Dec., Ex.2: McCaffrey Dep., at 52. Defendants dispute this, and that McCaffrey was ever told he had to stay in the store, although it was recommended that he remain during the inspection in case

_____

[3]The beer license issued to the Deli was valid, expiring on 3/312014. See Famighetti Dec., Ex. 9: New York State Liquor Authority, Grocery Beer, Wine Product License, Certificate # 817517.

there were any questions. Def. 56.1 Stmt., Pl. Counter-56.1 Stmt, ¶¶ 31, 32. At one point, McCaffrey did leave the store to retrieve his driver's license from his car, and testified that a couple of the officers followed him out to the car to do so. Famighetti Dec., Ex.2: McCaffrey Dep., at 51.

The inspection ended at approximately 3:15 p.m. The Deli received four (4) Notices of Violations, regarding an unclean hood, locked exit doors, servicing and mounting portable fire extinguishers, and inappropriate use of extension cords. Two appearance tickets were issued. See Reissman Dec., Ex. G: Violations; Ex. H: Appearance tickets. In November 2011, the charges contained in the appearance tickets were tried to jury and the Deli was acquitted. Def. 56.1 Stmt., Pl. Counter-56.1 Stmt, ¶ 90.

Following the November and December Inspections, on January 4, 2011, McCaffrey filed a complaint with a supporting deposition with the NCPD, alleging that Arnold "became upset" with him when McCaffrey resisted revealing his cell number during the November Inspection, and then returned "in retribution" on December 6, which resulted in the code violations. See Reissman Dec., Ex. E. By letter date January 23, 2011, McCaffrey forwarded a copy of the complaint to Defendant Nassau County Police Commissioner Lawrence Mulvey, expressing frustration that nothing had been done with his complaint and that Arnold's conduct should be investigated. See Famighetti Dec., Ex. 14.

On January 24, 2011, McCaffrey also wrote to Defendant Nassau County Chief Fire Marshal Thomas E. Tilley, complaining of threatening and abusive treatment from Defendants Szymanski and Kelleher, and that they be reprimanded. See Reissman Dec., Ex. I. On April 11, 2011, McCaffrey wrote to the Nassau County District Attorney's Public Corruption Bureau

asking that criminal charges be filed against thre five officers involved with the December

Inspection. See Famighetti Dec., Ex. 15. Similar letters complaining primarily about Sgt.

Arnold were written to New York State Department of Code Enforcement and Administration

and the New York State Attorney General in January and July 2011, respectively. See

Famighetti Dec., Ex. 16 and 17.

II.     Plaintiffs' Complaint

As stated above, Plaintiffs allege seven claims consisting of violations of Plaintiffs' First,

Fourth, Fifth and Fourteenth Amendments in violation of 42 U.S.C. § 1983, violations of 18

U.S.C. § 1962 and § 1964 (RICO), and state law claims for false arrest and imprisonment, abuse

of process and trespass to land and chattel. Defendants move for summary judgment against all

the claims contained Plaintiffs' complaint.[4]

DISCUSSION

I.      Legal Principles

A.      Standards on Motion for Summary Judgment

The standards for summary judgment are well settled. Rule 56(a) of the Federal Rules of

Civil Procedure states that summary judgment is appropriate only if "the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed.R.Civ.P. 56(a); Mihalik v. Credit Agricole Cheuvreux North America, Inc.,

2013 WL 1776643 (2d Cir. 2013). The moving party bears the burden of showing entitlement to

---

[4]Defendants argue the NCPD and NCFC are not suable entities and therefore all claims as
to them must be dismissed. Plaintiffs agree and withdraw their claims against those Defendants.
See Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary
Judgment, at 2, fn.1; at 17.

summary judgment. See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). In the context of a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004).

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002), quoting, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). As the Supreme Court has stated, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984), quoting, SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir.1978). Accordingly, it is insufficient for a party opposing summary judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996), quoting, Research Automation Corp., 585 F.2d at 33.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. ... There is no issue for trial unless there is sufficient evidence favoring the nonmoving

party for a jury to return a verdict for that party... If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 248-250 (citations omitted).

## II. Claims Against Commissioners Mulvey and Tilley

Plaintiffs claim that Comissioners Mulvey and Tilley are liable under 42 U.S.C. § 1983 for violations of Plaintiffs' constitutional rights. The thrust of this argument is that these Defendants both received complaint letters from McCaffrey regarding the Inspections, and yet failed to properly investigate or respond to these complaints. See Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem. of Law"), at 17-20.

### A. Legal Principles

It is well-settled that to hold a defendant individually liable for a civil rights violation a plaintiff must plausibly allege some personal involvement in the constitutional violation. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994), abrogated on other grounds, Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (citations omitted); Leshore v. Commissioner of Long Beach Police Department, 2012 WL 1032643 * 6 (E.D.N.Y. 2012). Personal involvement necessary to impose individual liability includes situations where the defendant: (1) directly participated in the infarction; (2) failed to remedy the wrong after learning of the constitutional violation; (3) created the policy or custom under which the unconstitutional practice occurred or allowed such custom or policy to continue or, (4) was grossly negligent in managing subordinates who caused the unlawful event. In addition, "liability may also be imposed where an official demonstrates 'gross negligence' or

'deliberate indifference' to constitutional rights ... by failing to act on information that unconstitutional practices are taking place." Wright, 21 F.3d at 501 (citations omitted); see also Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

### B.      Disposition of the Motion

Defendants move for summary judgment on the claims against Mulvey and Tilley. The nature of Plaintiffs' claims against these two Defendants is that their failure to investigate or properly respond to McCaffrey's written complaints of misconduct reflects a deliberate indifference to Plaintiffs' constitutional rights to substantiate § 1983 claims.

The court has reviewed the allegations of the complaint as set forth above and the evidence submitted in connection with the motion and finds that Plaintiffs have no basis to assert § 1983 claims against these two Defendants. Clearly, neither had any personal involvement in the Inspections, and the only potential personal involvement is that each received a complaint letter from McCaffrey. Furthermore, Tilley testified that upon receiving McCaffrey's letter, he investigated the allegations by speaking with Defendants Kelleher and Szymanski, and asked for a written report, which he reviewed. Tilley concluded that no wrongdoing occurred and no further investigation was warranted. See Affidavit of Thomas Tilley ("Tilley Aff."), at ¶ 3-11; Reissman Dec., Ex. J: Szymanski report; Famighetti Dec., Ex. 13: Tilley Deposition, at 21-24. Similarly, Plaintiffs argue that Mulvey received McCaffrey's complaint letter but he failed to investigate that McCaffrey's constitutional rights had been violated.

Even when reviewed in Plaintiff's favor, the undisputed facts do not substantiate a claim that Defendant Mulvey and Tilley were either personally involved or exhibited "deliberate indifference" to Plaintiffs' constitutional rights. Without more, Plaintiffs' disappointment with

-10-

the decision that no further investigation was warranted does not substantiate a civil rights claim. Thus, Plaintiffs fail to state § 1983 claims against these Defendants, and Defendants' motion for summary judgment on the claims against these two Defendants is granted.

III.     Count I - Municipal Liability under 42 U.S.C. § 1983

As noted above, Plaintiffs have withdrawn all claims against the NCPD and NCFC, but alleges in Count I that Nassau County is liable under 42 U.S.C. § 1983 for constitutional violations suffered by Plaintiffs.

A.     Legal Principles

In order to hold a municipality liable under 42 U.S.C. § 1983, a plaintiff is required to prove: (1) actions taken under color of law; (2) the deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury. Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008), citing Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "In short, to establish municipal liability under § 1983, a plaintiff must prove that 'action pursuant to official municipal policy'" caused the alleged constitutional injury. Cash v. County of Erie, 654 F.3d 324, 333 (2d Cir. 2011), cert. denied, 132 S.Ct. 1741 (2012).

A municipality can be imputed with a custom or practice actionable under § 1983 "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice..." Cash, 654 F.3d at 334, quoting Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004). Yet, "deliberate indifference" is a "stringent standard of fault," see Cash, 654 F.3d at 334, quoting Connick v. Thompson, 131 S.Ct. 1350, 1360 (2011) (other citations omitted), and emanates from

a policymaker's inaction resulting from "conscious choice" and not "mere negligence," where the "need for more or better supervision to protect against constitutional violations was obvious" but "the policymaker failed to undertake efforts to address the risk of harm." See Cash, 654 F.3d at 334 (citations omitted).

### B.    Disposition of the motion

Plaintiffs here have not provided any evidence of an official policy or practice to substantiate municipal liability under § 1983.  Indeed, the thrust of Plaintiffs' argument is that municipal liability here should be founded on the deliberate indifference of supervisory officials. See Pl. Mem. of Law, at 21-23.  Specifically, Plaintiffs argue that Tilley and Mulvey were "deliberately indifferent" to Plaintiffs' constitutional rights – namely, to be free from a warrantless search of the kitchen and area behind the counter without permission, and to exercise First Amendment rights of speech in connection with the November Inspection, that resulted in the allegedly retaliatory December Inspection.

As discussed above in connection with Plaintiffs' § 1983 claims against Tilley and Mulvey, the court finds that the evidence provided in connection with this motion does not substantiate the "deliberate indifference" as required for a finding of municipal liability.  Carbone v. County of Suffolk, WL 1386251, *9  (E.D.N.Y. 2013) (summary judgment granted where plaintiff could not substantiate custom or practice for municipal liability).  Defendants' motion for summary judgment on the 42 U.S.C. § 1983 claims against the County is granted.

### IV.    Count II - RICO Claim under 18 U.S.C. § 1962(a) and § 1964(c)

Plaintiffs asserts a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO" or "Act"), 18 U.S.C. § 1962(a), alleging that the Defendants "intentionally engaged in a

pattern of racketeering activity by repeatedly committing embezzlement, bribery, extortion and forgery," by, for example, attempting to extort fines, "to induce the Plaintiffs to bribe them and 'pay them off'... and by embezzling County monies entrusted to the Defendants to be used for proper investigation and not for the aforementioned illegal and improper use." Complaint, ¶ 32-36.

A. Legal Principals

18 U.S.C. § 1962(a) of the RICO Act makes it unlawful for any person who has received income from a pattern of racketeering activity to then use or invest that money in the acquisition, establishment or operation of any enterprise engaged in interstate commerce. 18 U.S.C. § 1964(c) provides a private cause of action to any person injured as a result of a violation of 18 U.S.C. § 1962.

i. Municipal Liability

A municipality is incapable "of forming the requisite criminal intent for RICO liability." Frooks v. Town of Cortlandt, 997 F.Supp. 438, 457 (S.D.N.Y.1998). See also Rogers v. City of New York, 359 Fed.Appx. 201, 204 (2d Cir. 2009). Furthermore, since Nassau County cannot be liable under RICO, nor can its municipal employees -- the other Defendants -- when sued in their official capacities. See Brewer v. Village of Old Field, 311 F.Supp.2d 390, 399 (E.D.N.Y. 2004), citing Frooks, 997 F.Supp. at 457. Therefore, Defendants' motion for summary judgment on Plaintiffs' RICO claim is granted as to Nassau and all Defendants sued in their official capacity on this basis.

ii. A Claim under 18 U.S.C. §1962(a)

Generally, to establish a RICO claim, a plaintiff must show: "(1) a violation of the RICO

-13-

statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused

by the violation of Section 1962." DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001), cert.

denied, 534 U.S. 891 (2001), citing Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp., 101 F.3d

900, 904 (2d Cir.1996) (citing First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 767

(2d Cir.1994)). Thus, a claim brought under any prong of § 1962, requires that the plaintiff

establish a "pattern of racketeering activity."[5] Spool v. World Child Intern. Adoption Agency,

520 F.3d 178, 183 (2d Cir. 2008) (citations omitted).

Specifically, to establish a claim under § 1962(a), the Second Circuit has held that

"[u]nder the plain language of this section, a violation of § 1962(a) consists of investing income

derived from a pattern of racketeering activity to acquire an interest in, establish, or operate an

enterprise; the violation is not established by mere participation in predicate acts of racketeering.

Accordingly, under the plain terms of the statute, to state a civil claim under § 1964(c) for a

violation of § 1962(a), a plaintiff must allege injury 'by reason of' *defendants' investment of*

*racketeering income* in an enterprise." Ouaknine v. MacFarlane, 897 F.2d 75, 82-83 (2d Cir.

1990) (citations omitted) (emphasis added).

B.      Disposition of the Claim

Plaintiffs have not provided any evidence to support a RICO claim here. Plaintiffs fail to

allege or show any evidence that a "pattern of racketeering activity" as defined by the statute

---

[5]As defined by the RICO statute, a "'pattern of racketeering activity' requires at least two
acts of racketeering activity, ... the last of which occurred within ten years ... after the
commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The acts of racketeering
activity that constitute the pattern must be among the various criminal offenses listed in §
1961(1), and they must be "related, and [either] amount to or pose a threat of continuing criminal
activity." Spool, 520 F.2d at 183.

-14-

exists, or that any income was derived from such racketeering, beyond making conclusory arguments that the November and December Inspections furthered a scheme to extort fines or other money from Plaintiffs. Furthermore, there is no allegation or any evidence that the Defendants have invested any such racketeering income, or that the investment has injured Plaintiffs. It is insufficient for a party opposing summary judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996) Therefore, Defendants' motion for summary judgment on Plaintiffs' RICO claim is granted. See Ouaknine v. MacFarlane, 897 F.2d 75, 82-83 (2d Cir. 1990).

V.    Count III - 42 U.S.C. § 1983 for Violations of 1st and 4th Amendments

The third count of the complaint alleges harm to Plaintiffs' First and Fourth Amendment rights in violation of § 1983. Specifically, Plaintiffs argue that McCaffrey was exercising his rights of free speech when he complained to Sgt. Arnold that, "I'll tell you what's bothering me. You're bothering me. You come in here on a national holiday on Veteran's Day pumping up your pension. You're a Sergeant, probably getting double time, and you're harassing me for no reason." The essence of Plaintiffs' complaint is that as a result of this free speech, the Defendants retaliated against McCaffrey and the Deli by conducting the December Inspection and citing the Deli for numerous fire code violations. Plaintiffs also argue the November and December Inspections violated their Fourth Amendment rights against unreasonable search and seizure and right to personal freedom.

-15-

A. First Amendment Retaliation Claim

    i. Legal Principles

It is basic to a claim under 42 U.S.C. § 1983 that a plaintiff allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights—in other words, there must be an injury, or harm. Colombo v. O'Connell, 310 F.3d 115, 117 (2d Cir.2002).

The harm or injury required to allege a First Amendment retaliation claim varies depending on the context. See Zherka v. Amicone, 634 F.3d 642, 643 (2d Cir. 2011). When making such a claim against a public official, a plaintiff must prove: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right. Curley v. Village of Suffern, 268 F.3d 65,73 (2d Cir. 2001), citing Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir.1998).

Yet, in the context of a private citizen claiming First Amendment retaliation against a public official, the Second Circuit has dispensed with the "chilling" requirement, in favor of a different type of harm that is asserted. See Gill v. Pidlypchak, 389 F.3d 379, 383 (2d Cir. 2004), citing Gagliardi v. Village of Pawling, 18 F.3d 188 (2d Cir. 1994) (requiring that plaintiff show (1) conduct that was protected by First Amendment and (2) the defendants' conduct was motivated by or substantially caused by his exercise of free speech). See also Zherka v. Amicone, 634 F.3d 642 (2d Cir. 2011) (reviewing the injury required to sustain a retaliation claim and holding that the presumed damages of *per se* defamation under New York law does not constitute the concrete harm required to sustain a First Amendment retaliation claim); see

-16-

<u>also</u> <u>MacPherson v. Town of Southampton</u>, 2013 WL 1833243, *5 (E.D.N.Y. 2013) (allegations that defendants repeatedly visited properties to intimidate tenants following the filing of a complaint constitutes the "other harm" requirement for a First Amendment retaliation claim).

### ii. <u>Disposition of the Motion</u>

Upon review of the submissions, and viewing all facts in a light most favorable to Plaintiffs, summary judgment on the First Amendment retaliation claim must be denied. While there is not a significant dispute that McCaffrey's speech directed at Sgt. Arnold constitutes speech protected by the First Amendment, <u>see</u> <u>Kerman v. City of New York</u>, 261 F.3d 229, 242 (2d Cir. 2001), the Court finds that numerous issues of fact exist on the second element Plaintiffs are required to establish – namely, whether Defendants' December Inspection and resulting violations were in fact motivated by McCaffrey's free speech exercised during the November Inspection. As a result, Defendants' motion for summary judgment on the First Amendment retaliation claim is denied.

### B.    <u>Fourth Amendment Claim</u>

Plaintiffs claims that Defendants had no right to conduct a warrantless search of the Deli and the area behind the counter without consent, and that McCaffrey was illegally seized during the December Inspection, in violation of Plaintiffs' Fourth Amendment rights.

### i. <u>Illegal Search</u>

### a. <u>Legal Principles</u>

Plaintiffs argue that the NCPD and the Fire Marshals had no authority to conduct the November and December Inspections, and thus violated their Fourth Amendment rights against illegal searches. Specifically, they argue that the Nassau County Fire Prevention Ordnance

("NCFPO") states that all of the National Fire Protection Association ("NFPA") standards are applicable to Nassau, and that one such standard, Chapter 1, Section 1.7.6.4 states that no inspection shall be conducted without the consent of the occupant or a Court warrant. See NPFA, Chap. 1, Section 1.7.6.4 (2009). Thus, Plaintiffs argue that the searches that Defendants conducted were illegal since no warrant was issued or consent given.

Regarding the authority of the Fire Marshal, Defendants submit an affidavit from Fire Commissioner Tilley, explaining that the standard requiring a warrant or consent does not apply to Nassau. Tilley affirms that only twelve (12) specified standards of the NFPA apply to Nassau, and Section 1.7.6.4 of Chapter 1 is not one of them. See Reply Affidavit of Thomas Tilley, ¶ 16-20. Furthermore, Tilley states that pursuant to the NCFPO, the Fire Marshal is authorized to perform safety inspections of buildings without a warrant. Section 2.1 of the NCFPO states that "The Fire Marshal...shall inspect, as often as may be deemed necessary, all buildings and premises, except the interior of one-family dwellings for the purposes of ascertaining or causing to be corrected any conditions liable to cause fire, or any violations of the provisions ... affecting fire hazard or egress of occupants in case of fire. See Tilley Reply Aff., Ex. S: NCFPO. Section 2.1.

Regarding the authority of the police Defendants, Defendants point to the Alcohol Beverage Control law ("ABC"), § 106[15], which provides that "[a]ll retail licensed premises shall be subject to inspection by ... police or other representative of the liquor authority" whenever open for regular business.

b. Disposition of the Motion

In light of Commissioner Tilleys' explanation of the accurate law that applies to the

authority of the Fire Marshal to conduct warrantless inspections of a building, and the authority granted the police under ABC § 106[15], it is clear that the Defendants had proper authority to conduct the Inspections.[6] Thus, the court finds that there was no Fourth Amendment violation, and Defendants' motion for summary judgment on Plaintiffs' Fourth Amendment § 1983 claim is granted.[7]

### ii. Seizure

Plaintiff McCaffrey claims that he was effectively arrested during the December Inspection when he was told that, "[i]f you walk out that door we will take you down, handcuff you and bring you in. ... You are basically under arrest. You're getting an appearance ticket today. You'll have to appear in court with an attorney." Famighetti Dec., Ex.2: McCaffrey Dep., at 52. According to McCaffrey, he was also advised to stay in the Deli during the inspection, and was escorted by two police officers when he had to leave to retrieve his drivers' license from his car. There is no dispute that McCaffrey was not placed in handcuffs or physically arrested. Def. 56.1 Stmt., Pl. Counter-56.1 Stmt, ¶ 31.

### a. Legal principles

It is well settled that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980).

----

[6]Since the court finds there was proper authority for the searches, there is no need to address Defendants' argument that Plaintiff McCaffrey consented to the search.

[7]The same reasoning applies to Plaintiffs' state law claim for trespass to land and chattel, which is also hereby dismissed.

### b. Disposition of the motion

The Court finds that summary judgment on the Fourth Amendment seizure claim must be denied. While there is no dispute that Plaintiff McCaffrey was not physically arrested or placed in handcuffs, there is a genuine question as to whether he reasonably believed he was not free to leave. As described by McCaffrey, the police officers arrived in the Deli in full uniform and initially threatened him with arrest if he was not cooperative. When he did leave to retrieve his driver's license from his car, two of the police officers accompanied him. There is a significant issue of fact as to whether a reasonable person would have believed that he was not free to leave. As a result, Defendants' motion for summary judgment on the Fourth Amendment seizure claim is denied.

## VI.    Count IV - 42 U.S.C. § 1983 for Violations of 5th and 14th Amendments

Plaintiffs allege in their complaint that the Defendants denied Plaintiffs their constitutional rights of liberty and property without procedural due process, by issuing code violations and continuing prosecution of those violations when no such violation occurred. Complaint, ¶ 43-48. In opposition to Defendants' motion for summary judgment, Plaintiffs also argue that McCaffrey was denied his procedural due process rights when he was effectively arrested during the December Inspection.[8]

"To award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process, a court must find that, as the result of conduct performed under color of state law, the

---

[8]While Plaintiffs style this claim as a Fifth and Fourteenth Amendment violation, in the opposition papers, Plaintiffs do not reference the Fifth Amendment and couch the claim only in terms of the Fourteenth Amendment. Therefore, the Court find that the Plaintiffs have waived the claim that Fifth Amendment rights were violated.

plaintiff was deprived of life, liberty, or property without due process of law." Bedoya v. Coughlin, 91 F.3d 349, 351 (2d Cir. 1996); Schultz v. Egan, 103 Fed.Appx. 437, 440 (2d Cir. 2004). It not clear from Plaintiffs' papers what specific procedural due process Plaintiffs claim was denied. Since the Court will try Plaintiffs' § 1983 claim for an unlawful arrest, the Court reserves decision on the merits of Plaintiffs' procedural due process claim until the time of trial.

VII. State Law Claims

A. False Arrest and Imprisonment

To make a claim for false imprisonment, the plaintiff must show that (1) the defendant intended to confine, (2) the plaintiff was conscious of the alleged confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. Gordon v. May Dept. Stores Co., 254 A.D.2d 327, 678 N.Y.S.2d 645, 646 (2d Dept. 1998)(citations omitted). As discussed above, Defendants' motion for summary judgment on Plaintiffs' § 1983 claim for unlawful arrest is denied. In light of the questions of fact concerning the alleged arrest of McCaffrey, summary judgment is also precluded on Plaintiffs' state law false arrest and imprisonment claim.

B. Abuse of Process

In New York, "a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003). A plaintiff must establish that the defendants had an improper purpose and motive in instigating the action. Id., at 77.

-21-

As discussed above, this court sustained Plaintiffs' First Amendment retaliation claim because of the numerous fact issues concerning what motivated the December Inspection. Similarly here, the court finds the same issues of fact preclude entering summary judgment on the abuse of process claim.

## CONCLUSION

The court hereby grants Defendants' motion for summary judgment on the following claims: all claims against Defendants NCPD and NCFC; all claims against Defendants Mulvey and Tilley; the 42 U.S.C. § 1983 claim against Nassau; the 18 U.S.C. § 1962(a) and § 1964(c) claims against all Defendants; the 42 U.S.C. § 1983 claim for Fourth Amendment illegal search claim; the trespass to land and chattel claim; and the Fifth Amendment claim.

The court denies Defendants' motion for summary judgment on the following claims: the 42 U.S.C. § 1983 First Amendment retaliation claim; the 42 U.S.C. § 1983 Fourth Amendment seizure claim; the false arrest and imprisonment claim; and the abuse of process claim. The court hereby reserves decision on the 42 U.S.C. § 1983 Fourteenth Amendment procedural due process claim until trial.

As previously ordered, Counsel are directed to appear for jury selection on June 3, 2013 at 1:30 pm.

SO ORDERED.

/s/ Leonard D. Wexler

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       May 25, 2013